357 So.2d 416 (1978)
STATE of Florida, Appellant,
v.
James Benny YOUNG, Appellee.
No. 77-757.
District Court of Appeal of Florida, Second District.
January 18, 1978.
Rehearing Denied April 7, 1978.
*417 Robert L. Shevin, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellant.
M. David Alexander of Boswell, Boswell & Conner, Bartow, for appellee.
SCHEB, Judge.
In a prosecution for reckless operation of a motor vehicle resulting in death, can the state charge a defendant under the general manslaughter statute, or must he be charged under the vehicular homicide statute having a less severe penalty? The trial court concluded it was incumbent upon the state to charge a defendant under the vehicular homicide statute. We agree.
The state's amended information charged defendant Young with manslaughter arising out of the negligent, careless, and reckless operation of a tractor trailer which resulted in the death of Lillie Speed Neal in January 1977. The charge was filed under Section 782.07, Florida Statutes (1975), the general manslaughter statute which classifies the offense as a second-degree felony. Upon defendant's motion, the trial court dismissed the amended information with leave to the state to file another information alleging a violation of Section 782.071, Florida Statutes (1975), the vehicular homicide statute. Section 782.071 defines vehicular homicide as:
[T]he killing of a human being by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another. Vehicular homicide is a felony of the third degree.
On this appeal the state contends the trial court erred in dismissing the amended information because defendant was effectively charged with manslaughter under Section 782.07, which states:
The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, shall be deemed manslaughter and shall constitute a felony of the second degree.
It is a general principle of statutory construction that statutes on the same subject should be harmonized when possible, but that a statute dealing specifically with a subject takes precedence over another statute covering the same subject in general terms. Adams v. Culver, 111 So.2d 665 (Fla. 1959); Marston v. Gainesville Sun Publishing Co., 341 So.2d 783 (Fla. 1st DCA 1976). A related principle is that an earlier penal statute must yield to a later one dealing with the same subject and providing a different penalty. 1A Sutherland Statutory Construction, Section 23.26 (C. Sands 4th rev. ed. 1972). See Adams v. Culver, supra.
In Adams a defendant sought habeas corpus to overturn his conviction under Section 800.04, Florida Statutes (1957), prohibiting lewd and lascivious conduct in the presence of a minor under fourteen years of age. The conduct with which the defendant was charged, i.e., exhibiting a pornographic picture to a child, was also proscribed by Section 847.01, Florida Statutes (1957), which specifically prohibited the exhibition of pornographic pictures to persons under seventeen. The lewd-and-lascivious statute *418 carried a maximum penalty of ten-years imprisonment; the pornographic-picture statute a maximum of three years. Based on the principles of statutory construction previously mentioned, the Supreme Court of Florida held the pornographic-picture statute alone was applicable. Justice Roberts, writing for the court, said:
Assuming, arguendo, that this is a "lewd or lascivious act" clearly within the intendment of § 800.04, cf. Boles v. State, 1946, 158 Fla. 220, 27 So.2d 293, the fact remains that the exhibition of a lewd and pornographic picture has been specially and explicitly dealt with by Subsections (1) and (2) of § 847.01, supra. It follows that ... the specific statute, alone, is applicable to the offense charged against petitioner [defendant].
111 So.2d at 667.
Turning to the instant case, it becomes apparent that the vehicular homicide statute is the only statute under which defendant can be prosecuted. Though the general manslaughter statute has in the past been construed to include the negligent operation of an automobile resulting in death, the vehicular homicide statute, enacted subsequently to the manslaughter statute, deals specifically with this situation. Moreover, the legislature has prescribed different penalties for the two offenses. Manslaughter is a second-degree felony with a maximum penalty of fifteen years in prison or a $10,000 fine, or both. Section 775.082(3)(c) and 775.083(1)(b), Florida Statutes (1975). Vehicular homicide, on the other hand, is a third-degree felony carrying a maximum penalty of only five-years imprisonment or a $5,000 fine, or both. Section 775.082(3)(d) and 775.083(1)(c), Florida Statutes (1975).
Although this point is of first impression in Florida, other jurisdictions have resolved the issue. In Atchley v. State, 473 P.2d 286 (Okl.Cr. 1970), the defendant was convicted of manslaughter as a result of an automobile accident. On appeal the issue was whether the general manslaughter statute was superseded by the state's subsequently enacted vehicular homicide statute. As now in Florida, the Oklahoma vehicular homicide statute provided a lesser penalty than did the general manslaughter statute. The court of criminal appeals held the vehicular homicide statute supplanted the manslaughter statute in cases where death resulted from negligent operation of a vehicle. Other jurisdictions are generally in agreement. See, e.g., State v. Hagge, 224 N.W.2d 560 (N.D. 1974); State v. Collins, 55 Wash.2d 469, 348 P.2d 214 (1960); State v. Biddle, 6 Terry 244, 45 Del. 244, 71 A.2d 273 (Ct. Oyer & Terminer Del. 1950).
One factor which may have led to enactment of vehicular homicide statutes was the reluctance of juries to return verdicts of guilt against defendants charged with manslaughter arising out of the operation of a motor vehicle. Legislatures in many states, including Florida, recognized this and enacted specific vehicular homicide statutes with somewhat lesser penalties. Since our legislature has determined a specific category of offense for vehicular homicide, we think this determination must govern and the state should be precluded from exercising prosecutorial discretion to charge a defendant under the general manslaughter statute.
We note in passing that this case is distinguishable from the recent supreme court decision in Fayerweather v. State, 332 So.2d 21 (Fla. 1976). There it was held that conduct violative of both the State Credit Card Crime Act (specifically Section 817.60(1)(3), Florida Statutes [1973], dealing with receiving stolen credit cards) and the statute making it unlawful to receive stolen property (Section 811.16) may be punished under the latter statute, notwithstanding that the State Credit Card Crime Act sets a less severe punishment. Unlike the vehicular homicide statute, the State Credit Card Crime Act provides that it "shall not be construed to preclude the applicability of any other provision of the criminal law ... unless such provision is inconsistent with [its] terms... ." Section 817.68, Florida Statutes (1973).
Affirmed.
HOBSON, A.C.J., and GRIMES, J., concur.

*419 ON PETITION FOR REHEARING
SCHEB, Judge.
On Petition for Rehearing the state argues that our main opinion is incorrect. The state contends that vehicular homicide as proscribed by Section 782.071, Florida Statutes (1975) is a lesser included offense within the crime of manslaughter as defined in Section 782.07. The thrust of the state's argument is that vehicular homicide requires a lesser standard of proof than does manslaughter. We disagree; however, in view of the significance of our holding, we accept the invitation to amplify our opinion by addressing the state's contention.
The state's argument is directed to the concept of lesser included offenses categorically explained in the classic case of Brown v. State, 206 So.2d 377 (Fla. 1968). Under Brown, a category 3 offense is a lesser crime necessarily included in the greater crime of which the defendant stands accused, viz., "the burden of proof of the major crime cannot be discharged without proving the lesser crime as an essential link in the chain of evidence." 206 So.2d at 382. Conversely, the major crime requires the proof of some element or elements in addition to those necessary to prove the lesser crime.
In a prosecution for manslaughter under Section 782.07 the state is required to prove "the killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification." To sustain a conviction for vehicular homicide under Section 782.071, it is incumbent upon the prosecution to establish the victim was killed as a result of the defendant operating a motor vehicle "in a reckless manner likely to cause the death of, or great bodily harm to, another." The state suggests that the reckless conduct described in Section 782.071 can be established by a lesser standard of proof than is required to prove culpable negligence under Section 782.07. Therefore, the state says, the lesser crime of vehicular homicide is but an "essential link in the chain of evidence" necessary to establish the greater crime of manslaughter. The state does not furnish, nor can we find, any support for this argument.
The vehicular homicide statute was originally enacted as Chapter 74-383, Section 16, Laws of Florida. Prior to its enactment, prosecution of those negligently causing the death of another by operation of a motor vehicle was possible only under the manslaughter statute. Therefore, the courts of Florida were called upon on numerous occasions to further define and elaborate on the meaning of "culpable negligence" in the manslaughter statute as related to the operation of a motor vehicle. As far back as 1926, when automobiles were beginning to become common on our streets, the Supreme Court of Florida in Cannon v. State, 91 Fla. 214, 221-22, 107 So. 360, 363 (1926), said that culpable negligence meant negligence "of `a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons.'" Over the years the courts of this state have continued to define culpable negligence within the context of manslaughter resulting from operation of a motor vehicle as conduct evincing a reckless disregard for human life. See, e.g., Fulton v. State, 108 So.2d 473 (Fla. 1959); Miller v. State, 75 So.2d 312 (Fla. 1954); Phillips v. State, 289 So.2d 769 (Fla. 2d DCA 1974); McCullers v. State, 206 So.2d 30 (Fla. 4th DCA 1968); Jackson v. State, 100 So.2d 839 (Fla. 1st DCA 1958).
We must presume the legislature had knowledge of these court interpretations when it enacted the vehicular homicide statute in 1974. In so doing, the legislature used language in the new statute which effectively encompasses the judicial definition of culpable negligence in the manslaughter statute. Thus it appears the standard of proof under the manslaughter statute was carried over into the vehicular homicide statute. By its new enactment the legislature apparently intended to punish those negligently causing the death of another by operation of a motor vehicle less severely than those doing so otherwise. Our speculation as to why the legislature decided to do this is included in the main opinion.
*420 Referring once again to Atchley v. State, 473 P.2d 286 (Okl.Cr.App. 1970), we find the Oklahoma statutes there involved contain language nearly identical to the Florida statutes in question here. The Oklahoma manslaughter statute speaks of "culpable negligence" and its vehicular statute refers to "reckless disregard of the safety of others," just as our Florida statutes do. In rejecting the state's argument that there was a difference in the elements of manslaughter and vehicular homicide, the Oklahoma court said:
[A] thorough examination of the two statutes in question reveal that the crime element established by the latter statute [47 O.S. § 11-903, Reckless disregard for the safety of others] and the elements of manslaughter second degree [O.S. § 716, Culpable Negligence] disclose that the substance of the crime in each case is the operation of an automobile with reckless disregard for the safety of others, thereby causing the death of another. Thus, we find two statutes providing for the punishment of identical acts... .
473 P.2d at 289. As noted in our main opinion, we find the Oklahoma court's reasoning highly persuasive in view of the similarity in language of the statutes of both states. See also State v. Biddle, 6 Terry 244, 45 Del. 244, 71 A.2d 273 (Ct. Oyer & Terminer 1950).
Despite the semantic differences between our two Florida statutes, we find no articulable difference in the elements of proof required to establish guilt of the crimes therein proscribed. Accordingly, we reject the state's argument in its Petition for Rehearing. We think that in enacting Section 782.071 the legislature intented to create a separate offense which requires the same standard of proof as is required under Section 782.07, but to impose a lesser penalty on those convicted for vehicular homicide.
We have examined the other contentions by the state in its Petition for Rehearing and find them to be without merit. As herein amplified, we adhere to our main opinion.
Recognizing the significance of our decision, we grant the state's motion to certify the question involved in this case to the Supreme Court of Florida under Art. V, § 3(b)(3), Fla. Const. as one of great public interest. We conceive the question to be as stated in the first sentence of our main opinion.
HOBSON, A.C.J., and GRIMES, J., concur.