STATE
*vs.*
DONALD F. LONDON

Aroostook.   Opinion, May 27, 1960.

124

Ferris A. Freme, County Attorney
Albert M. Stevens
Linwood E. Hand

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SIDDALL, J. The respondent was indicted and convicted of the crime of manslaughter following the death of another in an automobile accident. The State claimed that the re-

spondent was the operator of a vehicle in which the person killed was a passenger. The respondent seasonably filed a motion for a new trial. The motion was denied and respondent appealed.

One of the issues raised in the case now before us is whether or not P. L., 1957, Chap. 333, Sec. 2, hereafter called either the reckless homicide statute or the later statute, repeals or supersedes in part R. S., 1954, Chap. 130, Sec. 8, hereafter called either the manslaughter statute or the earlier statute.

R. S., 1954, Chap. 130, Sec. 8, provides:

> "**Manslaughter, definition.** — Whoever unlawfully kills a human being in the heat of passion, on sudden provocation, without express or implied malice aforethought, . . . or commits manslaughter as defined by the common law, shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 20 years."

It has been held that involuntary manslaughter insofar as it relates to a death caused by the operation of an automobile may be committed (1) when the operator is guilty of criminal negligence, (2) when the homicide occurred in the performance of an unlawful act *malum in se*, (3) when the homicide occurred in the performance of an unlawful act *malum prohibitum* if such act was the proximate cause of the death. *State* v. *Budge,* 126 Me. 223, 137 A. 244.

The respondent contends that the manslaughter statute insofar as it relates to deaths caused by the operation of an automobile was repealed or superseded by implication upon the enactment of P. L., 1957, Chap. 333, Sec. 2, the pertinent parts of which read as follows:

> "Any person who drives a vehicle with reckless disregard for the safety of others and thereby causes the death of another person, when the death of such person results within one year, shall be

guilty of the offense of reckless homicide. . . . Reckless disregard for the safety of others as used in this section shall mean one's conduct is in reckless disregard for the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that his conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to the other."

The State contends that there is a difference in the elements of manslaughter arising out of the operation of an automobile and reckless homicide, and that the later statute neither repealed by implication nor superseded the earlier statute.

No interpretation of the reckless homicide statute with reference to its effect on the earlier statute has been made by our court. However, the issue raised in this case has been considered in other jurisdictions having similar statutes, and its resolution has resulted in conflicting opinions by respectable authorities. Before reviewing any of these cases, however, we wish to discuss some well settled principles of statutory construction relating to repeals by implication.

The fundamental rule of statutory construction is the legislative intent. *Hunter* v. *Tolman,* 146 Me. 259, 265, 80 A. (2nd) 401; *State* v. *Standard Oil Co.,* 131 Me. 63, 159 A. 116; *Inhabitants of Augusta* v. *Inhabitants of Mexico,* 141 Me. 48, 38 A. (2nd) 822. This rule has been accepted universally and does not need further citation of authority. It applies with equal force to the establishment or denial of a repeal by implication. Sutherland Statutory Construction (3rd Ed.), Sec. 2012.

It is well settled that a repeal by implication is not favored and will not be upheld in doubtful cases. *Inman* v. *Willin-*

*ski,* 144 Me. 116, 123, 65 A. (2nd) 1; Sutherland Statutory Construction (3rd Ed.), Sec. 2014; 50 Am. Jur., Statutes, Sec. 538; 82 C. J. S., Statutes, Sec. 288. It is, however, equally well established that repeals by implication exist when a later statute covers the whole subject matter of an earlier statute, or when a later statute is repugnant to or inconsistent with an earlier statute. This principle has been expressed in appropriate language in many cases in this state. Thus, in *State* v. *Intoxicating Liquors,* 119 Me. 1, 11; 109 A. 257, our court said:

> "Repeal by implication exists in two classes of cases, first, when the later statute covers the whole subject matter of the earlier, especially when additional remedies are imposed, and second, when the later is repugnant to or inconsistent with the earlier."

In *Eden* v. *Southwest Harbor,* 108 Me. 489, 493, 494, 81 A. 1003, the court used the following language:

> ". . . to effect a repeal by implication the later statute must be so broad in its scope and so clear and explicit in its terms as to show that it was intended to cover the whole subject matter and to displace the prior statute or the two must be so plainly repugnant and inconsistent that they cannot stand together. *Goddard v. Boston,* 20 Pick. 407; *Smith v. Sullivan,* 71 Maine, 150; *Staples v. Peabody,* 83 Maine, 207."

We quote the following statement from the case of *Starbird* v. *Brown,* 84 Me. 238, 240, 24 A. 824.

> ". . . the precedents are numerous in support of a general rule which is applicable when it is claimed that one statute effects the repeal of another by necessary implication.
>
> The test is whether a subsequent legislative act is so directly and positively repugnant to the former act, that the two cannot consistently stand together. Is the repugnancy so great that the legis-

lative intent to amend or repeal is evident? Can the new law and the old law be each efficacious in its own sphere? *Brown v. City of Lowell,* 8 Met. 172; Bou. Law Dic. Statute."

See also *Maine Central Institution* v. *Inhabitants of Palmyra,* 139 Me. 304, 308, 309, 30 A. (2nd) 541; *Cummings, Appellant,* 126 Me. 111, 113, 136 A. 662; *Harris' Case,* 124 Me. 68, 126 A. 166; *Newport* v. *Railroad Co.,* 123 Me. 383, 387, 123 A. 172; *Opinion of Justices,* 120 Me. 566, 569, 114 A. 865; 50 Am. Jur., Statutes, Sec. 543; 82 C. J. S., Statutes, Secs. 291, 292.

The court will if possible give effect to both statutes and will not presume that a repeal was intended. *Eden* v. *Southwest Harbor, supra; Newport* v. *Railroad Co., supra; Opinion of Justices, supra.*

Where a later statute does not cover the entire field of the earlier statute but is inconsistent or repugnant to some of its provisions, a repeal by implication takes place to the extent of the conflict.

"If a criminal act deals with the same subject as a prior act and is inconsistent with and repugnant to the prior act, the latter will be repealed by implication *to the extent of the inconsistency.*" 50 Am. Jur., page 567. (Emphasis supplied.)

"Where two legislative acts are repugnant to, or in conflict with, each other, the one last passed, being the latest expression of the legislative will, will, although it contains no repealing clause, govern, control, or prevail, so as to supersede and impliedly repeal the earlier act *to the extent of the repugnancy.*" 82 C. J. S., page 489. (Emphasis supplied.)

Implied amendment or repeal of an earlier by a later statute is founded "on the reasonable inference that the legislature cannot be supposed to have intended that there should

be two distinct enactments embracing the same subject matter in force at the same time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enactments, and the only one which is to be regarded as having the force of law." *Knight* v. *Aroostook Railroad,* 67 Me. 291, 293.

These general rules applicable to all repealing statutes apply as well to penal statutes. "The repeal of a penal statute by express declaration, or by implication from later legislation does not present any problems which are peculiar to penal statutes alone, but the general rules applicable to all repealing statutes prevail." Sutherland Statutory Construction (3rd Ed.), Sec. 2031.

Where a later statute imposes a different penalty, either less or more, for the same or substantially the same offense, the later statute is ordinarily held to repeal the earlier one.

> "It is a well settled rule that, where a statute prohibits a particular act, and imposes a penalty for doing it, and a subsequent statute imposes a different penalty for the same, or practically the same, offense, the later statute repeals the earlier one, and this is true whether the penalty is increased or diminished." 82 C. J. S., page 520.

See also *State* v. *Davidson* (Idaho), 309 P. (2nd) 211 (1957) ; *State* v. *Lewis* (Tenn.), 278 S. W. (2nd) 81 (1955) ; *State* v. *Biddle* (Del.), 71 A. (2nd) 273 (1950) ; Sutherland Statutory Construction (3rd Ed.), Sec. 2031; 50 Am. Jur., Statutes, Sec. 567.

Before applying these general principles of construction to our own statutes, we deem it desirable to review briefly some of the cases relied upon either by the State or the respondent involving the question of repeals by implication in the enactment of reckless homicide laws.

Among the cases relied upon by the State are the following: *State* v. *Gloyd,* 148 Kan. 706, 84 P. (2nd) 966 (1938) ;

*State* v. *Barnett,* 218 S. C. 415, 63 S. E. (2nd) 57 (1951) ; *People* v. *Garman,* 411 Ill. 279, 103 N. E. (2nd) 636 (1952). In *State* v. *Barnett* the respondent was indicted for involuntary manslaughter. This case was dissimilar to the instant case in that the South Carolina reckless homicide law contained a specific provision, not found in our reckless homicide statute, to the effect that "it shall not affect, impair, or repeal" the statute fixing the punishment for involuntary manslaughter. Furthermore, in that state, contrary to the majority rule, simple negligence in the operation of an automobile was at that time sufficient to support a conviction for manslaughter. The court held that the legislature by the enactment of the reckless homicide law did not intend to repeal the common law offense of manslaughter, but, on the contrary, desired to preserve it. In *State* v. *Gloyd,* the respondent was convicted of manslaughter in the fourth degree, a felony. The legislature by an act later than the manslaughter act defined the crime of negligent homicide, a misdemeanor, in language similar to our own law. The court held that it was not the intention of the legislature that the force and effect of the statute denouncing manslaughter at common law should be abated by the enactment of a regulatory measure denouncing as a misdemeanor certain conduct which might have been manslaughter at common law. On the question of implied repeal the court stated, without further comment, that "the last act did not in any manner cover the field of the crimes act." In *People* v. *Garman,* an indictment against respondent contained several counts, among them one count charging reckless homicide and another charging involuntary manslaughter. Respondent was found not guilty of involuntary manslaughter, but was found guilty of reckless homicide. He prosecuted a writ of error, and one of the grounds relied upon was that the reckless homicide act charged the crime of manslaughter and that consequently, the verdict of the jury finding him not guilty of manslaughter required

his discharge as to the crime of reckless homicide. We note that under the Illinois statute the crime of reckless homicide is set forth in substantially the same language as our own statute, and that involuntary manslaughter relates to any "killing of a human being without an intent to do so, in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner." In denying that error existed, the court cited with approval the case of *State* v. *Gloyd, supra,* and found that the legislature in enacting the reckless homicide law intended to create a crime of a lesser degree than manslaughter. The court also found that the two crimes were separate and distinct and the defense of former jeopardy was not available to the respondent. In *Phillips* v. *State* (Ark.), 161 S. W. (2nd) 747 (1942), a case tending to substantiate the State's position, the respondent was found guilty of involuntary manslaughter in the operation of an automobile. Under the statutes of Arkansas involuntary manslaughter takes place "if the killing be in the commission of an unlawful act, without malice, and without the means calculated to produce death, or in the prosecution of a lawful act, done without due caution and circumspection." The term "without due caution and circumspection" was construed to mean criminal negligence. A later act defined and made punishable the crime of negligent homicide. The respondent claimed the later statute superseded the earlier insofar as it related to homicide in driving an automobile. In holding that the General Assembly by the enactment of the later law did not intend to repeal the earlier law, the court reasoned that if the later act repealed the former, where one had been killed by an automobile, it also repealed any other law applying to a homicide committed in driving an automobile, and that the General Assembly had no such intent. The court held that the prosecution might have been predicated upon a violation of either statute, but did not discuss the possibility of a repeal *pro tanto.*

In support of his contention the respondent calls the court's attention to the following cases: *State* v. *Biddle, supra; State* v. *Morf,* 80 Ariz. 220, 295 P. (2nd) 842 (1956) ; *State* v. *Davidson, supra.* In *State* v. *Biddle,* the respondent was indicted for the crime of involuntary manslaughter. A later statute was passed by the legislature similar to our reckless homicide statute. The court found there was no distinction between the elements of the two crimes; that the two statutes provided for the punishment of identical acts and the same proof that would support an indictment under one statute would be required to support an indictment under the other. The court said:

> "We are faced with the situation of two statutes each providing that identical acts shall constitute a crime. However, Section 5161 provides that such acts shall constitute manslaughter and a felony, while Chapter 186 provides that such acts shall constitute negligent homicide and a misdemeanor. The difference in degree provided in the two statutes for the same offense, in our opinion, has created an inconsistency which cannot be reconciled on any reasonable basis."

In *State* v. *Morf,* the respondent was charged with the crime of involuntary manslaughter, a felony. The case was certified to the Supreme Court for decision on the question of whether or not the enactment of a negligent homicide law (a misdemeanor) operated as a repeal in part of a section of an earlier manslaughter law insofar as that section made the operation of a motor vehicle without due caution and circumspection proximately causing death, involuntary manslaughter. Repeal of any other criminal situation arising under the manslaughter statute was not involved. In Arizona, the manslaughter statute, as set forth in the opinion, defined that crime as follows:

> "Manslaughter is the unlawful killing of a human being without malice. It is of two kinds: * * * involuntary, in the commission of an unlawful act

not amounting to a felony, or in the commission of a lawful act which might produce death in an unlawful manner, or without due caution and circumspection."

The court, in finding a repeal by implication as to that part of the manslaughter statute under consideration, said:

". . . we have noted above that this court has not hitherto laid down a specific definition of 'without due care and circumspection'. However, it would seem to require some fine and perhaps tenuous reasoning to hold that the criminal negligence thereby required is not practically equivalent to that required by the later negligent homicide statute. . . . We find no substantial difference between the criminal negligence required to convict under both the felony and the misdemeanor statutes."

In *State* v. *Davidson*, the respondent was convicted of the crime of involuntary manslaughter by driving a motor vehicle in an unlawful, reckless, careless, and negligent manner, and at an excessive speed, and thereby causing the death of another. The Idaho statute, as set forth in the opinion, defined involuntary manslaughter as "the unlawful killing of a human being, without malice. * * * in the operation of a motor vehicle in a reckless, careless or negligent manner which produces death; * * *." Later the Idaho legislature enacted a negligent homicide law. The later act contained provisions for repeal of all acts or part of acts inconsistent therewith. The court held that the word "negligent" meant criminal negligence, "such negligence as amounts to a reckless disregard of consequences and of the rights of others," and that there appeared to be no fundamental difference between the two statutes except in the punishment allowed to be imposed upon conviction. The later act was held to govern.

Having discussed the general principles of law in respect to repeals by implication and their application in other

jurisdictions, we now turn to their bearing on the present case. Obviously our later statute only applies to homicides in the operation of automobiles and does not cover the entire subject matter of the manslaughter statute. We are therefore concerned only with the question of whether or not its provisions are repugnant or inconsistent with all or any part of the earlier statute insofar as they relate to homicides in the operation of automobiles, and if so, whether the conflict is so great that a legislative intent to repeal is evident. We confine our attention first to the effect of the later act upon prosecutions for manslaughter in which the State relies upon criminal negligence to establish the crime charged.

What are the elements of criminal negligence under our decisions? In *State* v. *Budge, supra,* a prosecution for manslaughter involving the operation of an automobile, the court, in its opinion, noted that one of the issues to be considered by the jury was whether the respondent was conducting himself "in such a reckless manner with such utter disregard of the safety of others as to be guilty of criminal negligence." In *State* v. *Ela,* 136 Me. 303, 308, 8 A. (2nd) 589, another prosecution for manslaughter arising out of the operation of an automobile, the court said:

> "This Court is not of the opinion that in this case the State has proved that the respondent, Lewis L. Ela, was guilty of the gross or culpable negligence which it is necessary to establish to sustain his conviction for manslaughter. Gross or culpable negligence in criminal law involves a reckless disregard for the lives or safety of others. It is negligence of a higher degree than that required to establish liability upon a mere civil issue."

In *State* v. *Wright,* 128 Me. 404, 405, the prosecution was for manslaughter arising out of a shooting on a hunting trip. The court ruled that "criminality is not predicated

upon mere negligence necessary to impose civil liability but upon that degree of negligence or carelessness which is denominated gross or culpable."

An examination of the elements of the crime established by the later statute and of the elements of manslaughter by criminal negligence as set forth in our decisions discloses that the substance of the crime in each case is the operation of an automobile with reckless disregard for the safety of others, thereby causing the death of another. We find no distinction between the elements of the two crimes. The same evidence necessary to support an indictment under the later act would be sufficient to sustain an indictment for manslaughter based upon criminal negligence in the operation of an automobile, or *vice versa.* Thus, we find two statutes providing for the punishment of identical acts, the later by a fine of not less than $100 nor more than $1000, or by imprisonment for not less than 30 days nor more than 11 months, or by both, and the earlier act by a fine of not more than $1000 or by imprisonment for not more than 20 years. This being so, we feel that the reasoning advanced in those decisions holding that an implied repeal thereby resulted is preferable to that set forth in those cases which hold that two separate and distinct offenses exist. Accordingly, we are of the opinion, and so decide, that the later statute is repugnant and inconsistent with the earlier statute to such an extent that the legislature must have intended to repeal the earlier statute insofar as it applies to a prosecution for manslaughter based upon criminal negligence in the operation of an automobile.

In addition to discussing the effect of a violation of the pertinent motor vehicle laws, the court gave the jury full, complete, and clear instructions, as to the elements necessary to constitute criminal negligence in manslaughter cases arising out of the operation of an automobile, as the law had been theretofore applied in such cases. The jury re-

turned a general verdict of guilty. This verdict may have been predicated upon a finding of criminal negligence on the part of the respondent. In view of our conclusions a manslaughter prosecution arising out of the operation of an automobile cannot be based upon this ground. The respondent is entitled to a new trial.

It is unnecessary to take up any other aspect of this case. However, we feel that some comment should be made on the effect of the later statute on manslaughter cases based upon an unlawful act *malum in se* or *malum prohibitum*. An examination of the reckless homicide law discloses that it was a part of an act containing two sections, the first section being an amendment to R. S., 1954, Chap. 22, Sec. 151, of the motor vehicle laws and apparently designed to clarify the procedure for revoking the license of one convicted of manslaughter as the result of the operation of an automobile. Thus the legislature had before it for consideration at the time of enacting the reckless homicide statute, and as part of the same act, a provision relating to the revocation of the license of a person convicted of manslaughter in the operation of an automobile. Such a situation indicates a legislative intent to keep in effect to some extent the crime of manslaughter arising out of the operation of an automobile. Whatever the law may be in other jurisdictions, under our decisions reckless disregard for the safety of another is not necessarily an essential element of proof in a prosecution for manslaughter based upon a death occurring in the performance of an unlawful act. Prosecutions under the later law require elements of proof not necessarily essential under the earlier act. By the same token, prosecutions under the earlier act must be accompanied by elements of proof not necessarily required under the later act. The enactment of the later statute did *not affect* the law of manslaughter, as it has been heretofore applied in a homicide involving the operation of an automobile, where the basic

element of the crime lies in the commission of an unlawful act *malum in se* or *malum prohibitum,* unless proof of the particular unlawful act relied upon as the basis for the manslaughter charge necessarily requires evidence essential to establish the crime of reckless homicide. In such event, the offenses are identical, and the later statute governs.

Cases of homicide may arise in which the prosecutor feels that the evidence indicates the homicide occurred in the performance of an unlawful act, for example, while the operator of an automobile was intoxicated or under the influence of intoxicating liquor, and that the facts also indicate the existence of the elements of reckless homicide. A careful prosecutor, wishing to present the full facts to the jury for consideration, may well wonder whether a count charging felony and one charging misdemeanor may be joined in the same indictment. R. S., 1954, Chap. 145, Sec. 10, provides that when a person indicted for an offense, is acquitted of a part, and found guilty of the residue, he may be considered as convicted of the offense, if any, which is substantially charged by such residue, and be punished accordingly. It has been generally held under such statutes that counts for felony and misdemeanor growing out of the same transaction and of the same general nature and course of trial, may be joined. Whitehouse & Hill Criminal Procedure, Sec. 55; 27 Am. Jur. Indictments and Information, Sec. 132. See also 9 L. R. A. 182. Wharton's Criminal Procedure (10th Ed.), Sec. 339; 42 C. J. S. p. 1145, *et seq.* In a situation such as that set forth above, a homicide occurring in the same transaction is involved in both counts. The crimes are of the same general nature, although the penalties are different. Prior to the enactment of the reckless homicide law, all of the facts surrounding the homicide were presented to and considered by the jury upon proper instruction from the court. We can see no reason why a count in misde-

meanor and one in felony may not be included in the same indictment in such a situation. The court may, of course, in its discretion, if he deem it necessary for the promotion of justice, require the prosecutor to elect on which count he will proceed.

We are aware that we are presented with an anomalous situation. In prosecutions for manslaughter (a felony), predicated upon an unlawful act in the operation of an automobile, the unlawful act relied upon may in some cases be based upon conduct generally considered less culpable than that conduct necessary to establish reckless homicide (a misdemeanor). However, any remedy, if desirable, must come from the legislature.

The entry will be

*Appeal sustained.*
*New trial ordered.*